IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TERRENCE TIRAN HAGGINS, | ) | Civil Action No.: 4:08-cv-0161-HMH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | |
| | ) | REPORT AND RECOMMENDATION |
| SGT. GARRY MANIGAULT, | ) | |
| SGT. JOYCE PERRY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Terrence Haggins ("plaintiff"), filed this action on January 16, 2008, alleging various claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983. The plaintiff is an inmate currently housed at the Lancaster County Jail. On April 23, 2008, plaintiff filed a motion to amend his complaint. In said motion, plaintiff requested that he be allowed to dismiss defendant Ms. J. Perry from the complaint along with any allegations and requests for damages against Ms. Perry. Plaintiff's motion to amend was granted to the extent that Ms. J. Perry was dismissed as a party defendant. (See order of August 22, 2008, doc.#42). Before the undersigned is defendant Manigault's motion for summary judgment. (Document # 39.)[1]

## I. PROCEDURAL BACKGROUND

On July 11, 2008, the defendants filed a motion for summary judgment, along with supporting memorandum, affidavits, and exhibits. (Document # 39). The undersigned issued an

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

order filed July 14, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), advising the plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff failed to file a response. Therefore, the undersigned issued a ten (10) day order for the plaintiff to respond to the motion for summary judgment and informing him that if he failed to respond, his case may be dismissed for failure to prosecute pursuant to the Federal Rules of Civil Procedure 41(b). On September 4, 2008, plaintiff filed a response stating that because the court denied his motion for appointment of counsel and due to the lack of a law library and legal materials at the Lancaster County Jail, he would not be able to respond sufficiently and would not be able to proceed due to the court's failure to assist him. (Doc. #47).

## II.  DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

As noted above, the plaintiff is currently an inmate at Lancaster County Jail. The plaintiff alleges claims regarding incidents which occurred while he was incarcerated in the Special Management Unit (SMU) at the Lieber Correctional Institution. ("LCI").[2] The plaintiff alleges the defendants violated his Constitutional rights by not providing him with legal supplies such as paper, pencil, and envelopes unless he could show a court deadline. Plaintiff also alleges the use of force through the use of mace and the four point restraint chair, lack of medical attention, failure to respond to grievances, and that foreign objects were placed in his food which caused him harm.

---

[2] The plaintiff has been released from the custody of the SCDC. (See def. Memorandum, p. 4).

(Compl.).³

Plaintiff alleges that prisoner Eugene Daniels injured himself on July 2, 2007, and plaintiff along with other inmates called out for help for inmate Daniels. (Compl. P. 7). Plaintiff alleges that defendant came and accused Daniels of faking an injury and refused to call medical. Plaintiff alleges that defendant told plaintiff that he would mace him if he called for medical again. (Id.). Plaintiff alleges that he called to other officials to get help for inmate Daniels but defendant ran to his cell and began trying to unlock the food service window telling plaintiff that he was going to mace him for calling medical. (Id.). Plaintiff alleges that he repeatedly demanded that he be allowed to speak with the Lieutenant but defendant refused. (Id.). Plaintiff alleges that when Lieutenant McGhee came into SMU, he called to him and told him about defendant threatening to mace him for calling medical for inmate Daniels but that McGhee ignored him. (Compl. p. 8). Plaintiff alleges that defendant came back to this cell, opened the window and maced him in the face. (Id.). Plaintiff asserts that he was denied medical attention by defendant so he spit at defendant but could not reach him because the food service window was closed. (Id.). Plaintiff alleges that he was choking and burning from the mace and was later told to strip nude except for one pair of underwear by Lieutenant McGhee and was escorted to the 4-point restraint chair where he remained for four hours without the opportunity for motion and exercise every two hours all in violation of the Fourteenth Amendment. (Id.). Plaintiff alleges that he was without a mattress, clothes, and other necessities for a period of fifty-two days.

Plaintiff alleges that he was finally able to speak Mr. Thompson, Associate Warden, who ordered that plaintiff be given a mattress immediately. Plaintiff asserts that he filed a grievance with respect to the mattress issued. Further, plaintiff alleges that defendant continued to make threats

---

³ It is noted that plaintiff has filed several actions in this court.

against him and continued to "feed" him. Plaintiff asserts that on one occasion he spit up blood and x-rays revealed that he had metal in his stomach. (Compl. p. 10). Plaintiff alleges that he was taken for x-rays on several different occasions and that the Warden did nothing to guarantee his safety. (Comp. p.11). Plaintiff alleges that he went on a hunger strike due to officials placing metal in his food and he was never given medical attention during his hunger strike. (Comp. p. 11).

In his complaint, plaintiff asserts that he filed an "Informal resolution Request" but received no response. Therefore, plaintiff alleges that he filed a Step 1- grievance with the LCI on July 9, 2007, which was never returned. Further, plaintiff alleges that he later "submitted two other "informal Resolution Requests" to the Warden. (Compl. p. 12). Plaintiff submitted the affidavits of several inmates along with his complaint to support his allegations.

Defendant Sargent Garry Manigault ("defendant") asserts that he was assigned to the SMU where plaintiff was incarcerated along with inmate Eugene Daniels. Defendant asserts that on July 2, 2007, at approximately 8:30 a.m., he responded to reports that inmate Daniels was injured and needed medical attention. Defendant states that while he was tending to inmate Daniels, plaintiff was yelling out and "clamoring for attention" in his cell and refused defendant's repeated directives to quiet down and desist. (Defs.' Mem., Manigault's Aff.). Defendant alleges that he finally approached plaintiff's cell and attempted to unlock his cell door in order to cuff plaintiff and take him out of his cell. (Id.) However, defendant asserts he discovered the lock to plaintiff's cell was jammed and while working to unjam the lock, plaintiff spit at him several times and was holding a cup with an unknown substance in his hand, which could have been urine. (Id.). Further, defendant alleges plaintiff was also hiding behind his mattress, attempting to use it as a shield. (Id.). Defendant alleges that due to plaintiff's behavior, he used two (2) bursts of his "Top Cop" spray at the plaintiff through

the food flap. (Id.) Based on defendant's affidavit and the incident report, the beginning weight of the can was 140.00 and the ending weight was 127.0. (Id. ; incident reports). Defendant alleges that while this occurred, plaintiff threatened defendant by saying "I'm going to stab your pussy ass. Now tell your Lieutenant that, faggot." (Id). Defendant asserts that he notified Lieutenant McGhee immediately about the situation, the malfunctioning lock, the use of spray, and threats from the inmate. (Id.). Defendant alleges that the Lieutenant activated the Forced Control Movement Team (FCMT) in order to retrieve the inmate from his cell and place him in a restraint chair. (Id). Once the FCMT arrived to transport plaintiff, he desisted and allowed himself to be handcuffed and taken out of his cell and into the restraint chair. (Id). Plaintiff was charged with the offense of "threatening to inflict harm (809)."(Id.).

### B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir.1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed.R.Civ.P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts

showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings.  Fed.R.Civ.P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. Fed.R.Civ.P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## C.  EXHAUSTION

Defendant asserts that plaintiff has not exhausted his remedies with respect to any of the claims in his complaint. Defendant states that plaintiff has been released from the custody of the SCDC and, thus, any of his pending grievances were dismissed in accordance with policy and procedure. Defendant states that plaintiff attaches "Request to Staff" forms to his complaint which is only the First Step in the grievance procedure. Defendant asserts that Grievance LCI-0795-07 is a Step 1 grievance dated June 1, 2007, and received by the Lieber Inmate Grievance Coordinator (LGC) on June 6, 2007, but returned to plaintiff and partially non-grievable. The portion that was considered grievable was appealed to Step 2, but closed out when the plaintiff was released from

custody. (See Grievance LCI-0795-07; Exhibit D). Defendant asserts that Grievance LCI-1119-07 is a Step 1 grievance dated July 2, 2007, and received by the IGC on July 11, 2007, but was returned as non-grievable and was not appealed. (See Bowie affidavit and exhibit D). Grievance LCI-9082-07 is a Step 1 grievance dated July 2, 2007, that was sent directly to Sandra Bowie, the Inmate Grievance Administrator (IGA) and returned to plaintiff because it had been improperly sent. (Bowie Affidavit, Exhibit D). Grievance LCI-1184-07 is a Step 1 grievance dated July 18, 2007, and received by the IGC on July 23, 2007, but returned as non-grievable and not appealed. (See Bowie Affidavit; exhibit D). Therefore, defendant argues that plaintiff did not properly file grievances with regard to his claims.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In Porter v. Nussle, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. Recently in Woodford v. Ngo, __ U.S.__ , 126 S. Ct. 2378, 2386, 165 L.Ed.2d 268 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id*. (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any

federal law, including §1983. *Id.* [4]

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Woodford, 126 S.Ct. at 2385 (*quoting* McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

The undersigned agrees with defendant that plaintiff has failed to exhaust his administrative remedies with regards to the claims raised in this action.[5] Exhaustion is a prerequisite to suit that

---

[4] In order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official has sixty (60) days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983. 42 U.S.C. § 1997e.

[5] The only possible claim that was exhausted would be the one filed in Grievance LCI-0795-07 dated June 1, 2007. In this particular grievance, plaintiff requested that his alleged altercations with defendant in "May 2007" whereupon defendant allegedly threatened plaintiff and slammed his food service flap after making threats of harm be investigated. Defendant has stated that plaintiff appealed the decision to a Step 2 but that it was still open at the time of his release from custody and, thus, dismissed pursuant to policy. Even if plaintiff had exhausted the allegations as to this defendant in that grievance, the claim still would fail on the merits. A review of this claim reveals plaintiff asserts that defendant "threatened him" and slammed his food service flap. Plaintiff has failed to show physical injury as a result of this particular

8

must be completed prior to filing an action. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005). Consequently, the plaintiff's claims ins this action should be dismissed because the plaintiff has failed to exhaust his administrative remedies prior to filing the instant action. Cabbagestalk v. Ozmint, 2007 WL 2822927 (D.S.C. 2007). *See also* Neal v. Goord, 267 F.3d 116, 123 (2nd Cir.2001)(holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."); Jackson v. Dist. of Columbia, 254 F.3d 262, 268-69 (D.C.Cir. 2001)(rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)(holding a "prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir.1999) (holding "[a]n inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir.1999) (holding "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

     A review of the complaint form in this matter reveals that plaintiff stated with respect to the allegations raised in his complaint that he had filed a grievance on July 9, 2007, and August 21, 2007, and but then stated that he had filed "informal resolution requests which is part of exhausting

---

allegation, and if any injury, it was de minimis. The Prison Litigation Reform Act provides that physical injuries are a prerequisite for an award of damages for emotional distress under 42 U. S. C. § 1983. See new 42 U.S.C. § 1997e(e); Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997).

9

available remedies." Within the body of the complaint, plaintiff appears to only assert that he filed one "Step One" grievance which concerned being threatened by defendant in May 2007. Plaintiff only attached informal requests and the one Step One grievance as exhibits to his complaint. As previously noted, plaintiff only responded to the motion for summary judgment stating that due to a lack of a law library at the Lancaster County Jail, he could not proceed with his case. Plaintiff asserts in his response that he cannot respond sufficiently due to the court failing to assist by denying him appointment of counsel and no access to a law library.[6] Plaintiff did not attempt to argue against defendant's allegations of failure to exhaust. Accordingly, based on the evidence provided, the plaintiff did not exhaust his administrative remedies prior to filing this action. Thus, it is recommended that defendant's motion for summary judgment be granted.

### III.  CONCLUSION

Based on the above reasoning, it is RECOMMENDED that defendant's motion for summary judgment (doc.# 39) be GRANTED.

Further, IT IS RECOMMENDED that any outstanding motions be deemed MOOT.

---

[6] Plaintiff stated in his response that he had not received a copy of defendants' "so-called Motion for Summary Judgment." (Doc. #47). Defendants filed a reply stating that they had served plaintiff with a copy of the motion for summary judgment and attached a certificate of service along with a copy of a letter to plaintiff regarding their motion for summary judgment. (Doc. #48)..

                                            Respectfully Submitted,

                                            <u>s/Thomas E. Rogers, III</u>
                                            Thomas E. Rogers, III
                                            United States Magistrate Judge

January <u>23</u>, 2009
Florence, South Carolina

        **The parties' attention is directed to the important notice on the next page.**